ACTIVISION BLIZZARD, INC., Philippe G.H. Capron, Jean–Yves Charlier, Robert J. Corti, Frederic R. Crepin, Jean–Francois Dubos, Lucian Grainge, Brian G. Kelly, Robert A. Kotick, Robert J. Morgado, Richard Sarnoff, Regis Turrini, Vivendi, S.A., ASAC II LP and ASAC II LLC, Defendants Below, Appellants,

v.

Douglas M. HAYES, on behalf of Himself and all Others Similarly Situated and Derivatively on Behalf of Nominal Defendant Activision Blizzard, Inc., Plaintiff Below, Appellee.

No. 497, 2013.

Supreme Court of Delaware.

Submitted: Oct. 10, 2013.
Decided: Nov. 15, 2013.

ert J. Corti, Robert J. Morgado and Richard Sarnoff.

Of Counsel: William Savitt, Esquire (argued), Kevin S. Schwartz, Esquire, Ryan A. McLeod, Esquire, Anitha Reddy, Esquire, Wachtell, Lipton, Rosen & Katz, New York, New York.

Raymond J. DiCamillo, Esquire, Scott W. Perkins, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware for Appellants Vivendi S.A., Philippe G.H. Capron, Jean–Yves Charlier, Frederic R. Crepin, Jean–Francois Dubos, Lucian Grainge and Regis Turrini.

Of Counsel: Joel A. Feuer, Esquire and Michael M. Farhang, Esquire, Gibson, Dunn & Crutcher LLP, Los Angeles, California.

Edward P. Welch, Esquire, Edward B. Micheletti, Esquire, Sarah Runnells Martin, Esquire and Lori W. Will, Esquire, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware for Appellant Activision Blizzard, Inc.

R. Judson Scaggs, Jr., Esquire, Angela C. Whitesell, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware for Appellants Brian G. Kelly, Robert A. Kotick, ASAC II LP and ASAC II LLC.

Of Counsel: Robert A. Sacks, Esquire and Diane L. McGimsey, Esquire, Sullivan & Cromwell LLP, Los Angeles, California.

Michael Hanrahan, Esquire (argued), Gary F. Traynor, Esquire, Paul A. Fioravanti, Jr., Esquire, Patrick W. Flavin, Esquire and Eric J. Juray, Esquire, Prickett, Jones, & Elliott, P.A., Wilmington, Delaware for Appellee Douglas M. Hayes.

Of Counsel: Marc A. Topaz, Esquire, Eric L. Zagar, Esquire, Robin Winchester, Esquire and Matthew A. Goldstein, Esquire, Kessler Topaz Meltzer & Check LLP, Radnor, Pennsylvania.

Collins J. Seitz, Jr., Esquire, Garrett B. Moritz, Esquire, Anthony A. Rickey, Esquire, Seitz Ross Aronstam & Moritz LLP, Wilmington, Delaware for Appellants Rob-

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

This is an interlocutory appeal from entry, by the Court of Chancery, of a preliminary injunction halting consummation of a stock purchase agreement under which Vivendi, S.A. would have divested itself of its controlling interest in Activision Blizzard, Inc. Appellee, an Activision stockholder, convinced the trial court that the company's charter requires that a majority of the public stockholders vote in favor of the transaction. The relevant provision applies to "any merger, business combination, or similar transaction" involving Vivendi and Activision. The trial court held that Activision's purchase of its own stock would be a business combination because significant value ($5.83 billion) would be transferred to Vivendi in exchange for Activision's acquisition of a newly-formed Vivendi subsidiary that holds Vivendi's Activision stock. By order entered on October 10, 2013, this Court reversed. We now set forth the basis for that decision.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The 2008 Business Combination

Activision, Inc., a Delaware corporation, is a global developer, publisher, and distributor of video games. Vivendi, S.A. is a French digital entertainment company with movie, music, internet, television, and video game businesses. On December 1, 2007, Activision entered into a Business Combination Agreement (BCA) with Vivendi and two of its subsidiaries. Under the BCA, Activision acquired Vivendi's video game subsidiary, Vivendi Games, Inc., in exchange for 295.3 million shares of Activision common stock. Vivendi also purchased 62.9 million shares of Activision stock for $1.731 billion in cash, and Activision conducted a self-tender offer. After these transactions, Activision's name was changed to Activision Blizzard, Inc., and Vivendi wound up owning approximately 61% of Activision's stock.

The BCA was conditioned on stockholder approval of amendments to the company's charter and bylaws. The amended charter provision that is the focus of this appeal, Section 9.1(b), requires approval of a majority of the stockholders unaffiliated with Vivendi "with respect to any merger, business combination or similar transaction involving the Corporation ... and Vivendi...." [1] The BCA also changed the structure of the Activision board of directors. After the merger, Vivendi designated six of the 11 members of the company's board; three directors were independent, and the two remaining directors were Activision's President and CEO, Robert Kotick, and Co–Chairman of the Board, Brian Kelly.

### B. The 2013 Stock Purchase Transaction

In June 2012, Vivendi decided to sell its Activision holdings. After finding no outside buyers, Vivendi entered into negotiations with a special committee of Activision's independent board members, which culminated in the July 25, 2013 Stock Purchase Agreement (SPA) that precipitated this action. Under the SPA, Activision agreed to pay Vivendi $5.83 billion for 429 million shares of Activision stock and $675 million in net operating loss carryforwards (NOLs). To accomplish this part of the transaction, Vivendi created a non-operating subsidiary, New VH (referred to as "Amber"), to hold the Activision shares and the NOLs. Activision was to acquire Amber.

1. Appellants' Appendix, A–523.

Activision's acquisition of Amber would divest Vivendi of 38% of Activision's outstanding common stock. Under the SPA, Vivendi agreed to sell an additional 172 million Activision shares to ASAC II, LP, a limited partnership owned in part by Kotick and Kelly. The stock acquired by Activision was to be treated as treasury shares, thereby reducing the total number of shares outstanding. The net result of the SPA transactions would be that Vivendi would retain 11.9% of Activision stock, ASAC would acquire 24.7% of the stock, and the remaining 63.4% of the company's stock would be held by the public.

### C. The Litigation

On July 25, 2013, Activision issued a press release announcing the stock purchase. At the same time, the company announced strong preliminary second quarter 2013 results and increased its 2013 financial outlook. That day, Activision's closing price was $15.18 per share. The next day, Activision's stock price jumped to $17.46 per share. Market analysts generally applauded the stock purchase, and some attributed the 15% common stock price increase to the SPA.[2]

Following the announcement, several Activision stockholders filed lawsuits challenging the stock purchase. Douglas Hayes filed this class action and derivative complaint in the Court of Chancery on September 11, 2013. The complaint alleges that: (1) Section 9.1(b) of Activision's charter requires a stockholder vote to approve the stock purchase; (2) the director defendants breached their fiduciary duties by entering into a transaction that is unfair to the company's public stockholders;

(3) Kelly and Kotick usurped a corporate opportunity from Activision; (4) the director defendants wrongfully manipulated the corporate machinery to entrench themselves in office; (5) ASAC, and its investors, aided and abetted the alleged breaches of fiduciary duty; and (6) ASAC's investors were unjustly enriched as a result of the stock purchase.

Hayes filed a Motion for Temporary Restraining Order (TRO) with his complaint. The Court of Chancery heard the motion on September 18, 2013—the day before the stock purchase was set to close. The trial court, *sua sponte*, converted the TRO motion into one for a preliminary injunction. The trial court held that the stock purchase is a "merger, business combination or similar transaction" within the meaning of Section 9.1(b) of Activision's charter. As a result, the trial court entered a preliminary injunction halting the stock purchase closing until Activision's public stockholders vote in favor of the transaction.

This interlocutory appeal followed. After expedited briefing and argument, on October 10, 2013, this Court issued an Order reversing the injunction order on the merits.[3]

### DISCUSSION

Activision[4] raises three claims on appeal. First, the company contends that the trial court erred in converting the TRO motion into a motion for a preliminary injunction without notice. Second, Activision argues that Hayes' delay in seeking an injunction constituted laches, and that

---

2. *See, e.g.,* Paul Ausick, *Activision Blizzard Nears All–Time High on Independence from Vivendi,* 24/7 Wall St., 2013 WLNR 18418447 (July 26, 2013).

3. Activision completed the stock purchase on October 11, 2013. In this Opinion, however,

we analyze the transaction before closing, as it was briefed and argued.

4. The 15 appellants are referred to collectively as "Activision" unless the context indicates otherwise.

the trial court should have denied equitable relief on that basis. Finally, the company argues that the trial court erred on the merits—the charter provision requiring a stockholder vote does not apply to the stock purchase. We need not address the first two claims because we are addressing the merits.

Section 9.1(b) of its charter controls whether Activision's stockholders have the right to vote on the stock purchase. That section subjects certain transactions to the approval of a majority of voting stockholders unaffiliated with Vivendi, if Vivendi's voting interest is between 35% and 90%:

> Unless Vivendi's Voting Interest (i) equals or exceeds 90% or (ii) is less than 35%, with respect to any merger, business combination or similar transaction involving the Corporation or any of its Subsidiaries, on the one hand, and Vivendi or its Controlled Affiliates, on the other hand, in addition to any approval required pursuant to the DGCL and/or the Corporation's by-laws, the approval of such transaction shall require the affirmative vote of a majority in interest of the stockholders of the Corporation, other than Vivendi and its Controlled Affiliates, that are present and entitled to vote at the meeting called for such purpose.[5]

The question is whether the stock purchase constitutes a "merger, business combination, or similar transaction" within the meaning of the quoted charter provision.

In analyzing this issue, the Court of Chancery relied on *Martin Marietta Materials, Inc. v. Vulcan Materials Co.,*[6] for

the following propositions: 1) the term "business combination" is fundamentally ambiguous and "expansive";[7] and 2) "the purchase of the stock of a wholly-owned subsidiary could easily qualify as a business combination."[8] The trial court looked to the definition of "business combination" in 8 *Del. C.* § 203 as illustrative, and found that the stock purchase would be a "business combination" under § 203(c)(3)(ii) and § 203(c)(3)(v). In addition, the trial court noted that Activision's acquisition of Amber fits the dictionary definition of a business combination.

But, it appears that the primary basis for the trial court's conclusion was its belief that Section 9.1(b) was intended to give the minority stockholders "a vote on transactions with a controller that could have not just control implications but value-transfer implications."[9] The Court of Chancery then concluded that the stock purchase qualifies as a value-transfer transaction:

> This is an $8 billion reorg. of Activision. Value is moving. Value is moving to the former controller. Value is moving to management. And a core part of the transaction is the corporation, Activision's, acquisition of a controlled subsidiary of Vivendi [Amber]. This is the type of thing that I think falls squarely within Section 9.1.

■ This Court reviews the trial court's determination of questions of law *de novo.*[10] In deciding what the phrase "merger, business combination, or similar transaction" means, our first inquiry is whether it is ambiguous. Under settled Delaware law, the terms of a charter provision, like any other contract, are given their plain meaning.[11] A provision is am-

---

5. Appellants' Appendix, A–523.

6. 56 A.3d 1072 (Del.Ch.2012).

7. *Hayes v. Activision Blizzard, Inc. et al.,* C.A. No. 8885–VCL, 2013 WL 5293536 (Del.Ch. Sept. 18, 2013), Transcript at 87.

8. *Id.* at 87–88.

9. *Id.* at 92–93.

10. *Kaiser Aluminum Corp. v. Matheson,* 681 A.2d 392, 394 (Del.1996).

11. *Alta Berkeley VI C.V. v. Omneon, Inc.,* 41 A.3d 381, 385 (Del.2012).

biguous only if it is "reasonably susceptible to more than one meaning,"[12] and the fact that the parties offer two different interpretations does not create an ambiguity. Moreover, a provision "may be ambiguous when applied to one set of facts but not another."[13] Finally, the provision must be read in context. For example, if a charter and bylaws are amended as part of the same transaction, that indicates that they are intended to be complementary.[14]

■ There may be transactions where the meaning of the phrase "business combination" in Section 9.1(b) would be ambiguous. But the stock purchase at issue here is not one of them. Under the SPA, Vivendi will sell 429 million shares of Activision stock back to the company. Because those shares will become treasury stock, control of Activision will shift from Vivendi to Activision's public stockholders. Vivendi's holdings will decrease from 61% to 12%, and Vivendi's representation on Activision's board will decrease from six appointees to none. This transaction does not involve any combination or intermingling of Vivendi's and Activision's businesses. Indeed, it is the opposite of a business combination. Two companies will be separating their business connection, leaving Vivendi as a minority stockholder without voting or board control over Activision. In sum, Section 9.1(b) plainly does not apply to the stock purchase under the SPA.

Neither the form of the transaction nor its size changes its fundamental nature. The trial court accepted Hayes' argument that the stock purchase is a business combination because Activision will be purchasing its stock from Vivendi by acquiring Amber, a newly-created, wholly-owned Vivendi subsidiary. Thus, technically, Activision will combine with Amber. But Amber has never and will never conduct any business. It is a shell company created by Vivendi and its sole function is to serve as a vehicle for the transfer of valuable NOLs together with the Activision stock. Calling Amber a business for purposes of Section 9.1(b) disregards its inert status and glorifies form over substance.

Finally, we note that the trial court interpreted Section 9.1(b) broadly to include this "value-moving" transaction in order to protect Activision's minority stockholders from overreaching by Vivendi. There are two problems with that interpretation. First, nothing in the plain language of Section 9.1(b) suggests that a "business combination or similar transaction" includes a transaction that involves a large transfer of funds or other assets. A "similar transaction" is one that, like a merger or business combination, results in Vivendi having a greater connection with and/or control over Activision's business. Second, the broader protection that the trial court read into Section 9.1(b) is addressed by Activision's bylaws. Section 3.12(a)(iii) requires a majority of independent directors to approve *any* related-party transaction, regardless of its form or magnitude.[15] The bylaw provides the broad protection contemplated by the trial court at the director level. And, the charter provides additional protection at the stockholder level, but only for transactions that increase Vivendi's interest in Activision.

### CONCLUSION

Based on the foregoing, the Preliminary Injunction entered by the Court of Chancery is hereby vacated. This matter is

---

12. *Ibid.*

13. *Morgan Stanley Grp., Inc. v. New England Ins. Co.,* 225 F.3d 270, 278 (2d Cir.2000).

14. *Centaur Partners IV v. National Intergroup, Inc.,* 582 A.2d 923, 928 (Del.1990).

15. Appellants' Appendix, A–502.

remanded for further action. Jurisdiction is not retained.