# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

In re: Subpoena Request of : 
Kathleen McGuiness, :C.A. No. N21M-08-003-CAK 
Delaware State Auditor of Accounts :

Submitted: July 15, 2022
Decided: August 10, 2022

*Upon Motion to Quash by Delaware Department of Health and Social Services*

**DENIED**

**MEMORANDUM OPINION AND ORDER**

Luke W. Mette, Esquire, Armstrong Teasdale LLP, 300 Delaware Avenue, Suite 210, Wilmington, DE 19801, Christopher P. Lynett, Esquire and Bianca A. Valcarce, Esquire, Armstrong Teasdale LLP, 2005 Market Street, Floor 29, One Commerce Square, Philadelphia, PA 19103, Attorneys for Delaware Office of Auditor of Accounts.

Joanna S. Suder, Esquire, Deputy Attorney General, Carvel State Office Building, 820 North French Street, 6th Floor, Wilmington, DE 19801, Attorney for Delaware Department of Health and Social Services.

**KARSNITZ, R.J.**

## I.     BACKGROUND

### A. Facts and Procedural History

By letter dated May 4, 2021[1] the Delaware Office of Auditor of Accounts ("OAOA") requested that the Delaware Department of Health and Social Services ("DHSS") produce a fifteen-point list of items over a three-year period[2] from DHSS's Division of Medicaid and Medical Assistance ("DMMA") in connection with a performance audit of Medicaid eligibility (the "Audit"). OAOA stated the objectives of the Audit were to determine "whether DMMA is complying with federal and state requirements, has effective internal controls, and incorporates data integrity throughout the program."[3]

By letter dated June 3, 2021[4] DHSS requested clarification as to OAOA's authority to conduct the type of audit requested.  Specifically, DHSS asked the Auditor to provide the following:

1. the statutory authority under which OAOA can conduct a performance audit of Medicaid eligibility;

2. the statutory authority under which DHSS can share specific Medicaid participant information, and the connection between that authority and 31 *Del. C.* § 1101;

---

[1] Exhibit B to Motion to Quash Subpoena (Trans. ID. 66865014).
[2] *Id.*
[3] *Id.*
[4] Exhibit E to Motion to Quash Subpoena (Trans. ID. 66865014).

3. an explanation as to why the annual Statewide Single Audit is insufficient to meet the OAOA request;

4. whether OAOA would be conducting the Audit or hire outside auditors to assist;

5. an explanation as to why Audit & Recovery Management Services ("ARMS") is insufficient to conduct a performance audit of Medicaid eligibility; and

6. an explanation as to why the Medicaid Integrity Program ("MIP") unit of DMMA is insufficient to detect fraud and abuse with oversight from the Centers for Medicare & Medicaid Services ("CMS").[5]

By letter dated June 22, 2021,[6] OAOA responded that it had such authority under various sections of Title 29, Chapter 29 of the Delaware Code, as more fully discussed below.

By letter dated July 30, 2021,[7] DHSS advised OAOA that, although DHSS did not believe that OAOA had the statutory authority to compel the release of all the items requested, DHSS would provide the following:

1. Screenshots from the federal Medicaid Budget and Expenditure System ("MBES") showing funding and expenditures during the audit period;

2. Copies of the annual Statewide Single Audit, Payment Error Rate Measurement ("PERM"), and Medicaid Eligibility Quality Control ("MEQC") reports and corrective action plans for the audit period;

3. CMS approved verification plan describing data sources used in eligibility determinations;

4. Organizational charts for DHSS and DMMA;

---

[5] *Id.*
[6] Exhibit F to Motion to Quash Subpoena (Trans. ID. 66865014).
[7] Exhibit G to Motion to Quash Subpoena (Trans. ID. 66865014).

5.     Medicaid State Plan and Delaware Social Services Manual (website links) and copies of DHSS/DMMA administrative notices issued during the audit period; and

6.     Description of staff training program and copies of staff training materials.[8]

On August 4, 2021, OAOA filed a Complaint for Issuance of Subpoena (the "Complaint") directing DHSS to produce the requested documents.[9] The Complaint asserted that OAOA's subpoena power to compel production of documents was provided by statute under 29 *Del. C.* §2910.[10] This Court issued the subpoena (the "Subpoena") on August 4, 2021.[11]

On October 13, 2021, counsel for DHSS informed the Court that the parties had exchanged communications regarding the basis for various items requested in the Subpoena.[12] After meeting and consulting on October 19, 2021, October 25, 2021, and October 28, 2021, on November 1, 2021 counsel for DHSS informed the Court that the parties narrowed the issues to be presented to the Court at a hearing on November 2, 2021 to three:

1.     Whether OAOA is legally permitted to receive the Personally Identifiable Information of Medicaid beneficiaries in connection with the proposed Audit;

---

[8] *Id*. DHSS further advised "We will endeavor to provide these to you by August 31, 2021. We will continue discussions with our legal counsel to evaluate your remaining requests."
[9] Complaint.
[10] Complaint ¶ 2.
[11] Subpoena Duces Tecum (Trans. ID. 66820467).
[12] Letter from Ann C. Cordo, Esquire to the Court (Trans. ID. 67010811).

2.     Whether OAOA is legally permitted to have two employees receive read only access to the entire State Medicaid system for the purpose of conducting the Audit; and

3.     Whether OAOA has legal authority to conduct a performance audit of DHSS in the manner and scope specified in the Subpoena.[13]

## B. Motion to Quash

On August 19, 2021, DHSS filed the Motion to Quash Subpoena (the "Motion")[14] under the Superior Court Civil Rules.[15] On October 26, 2021 OAOA filed its *pro se* Response to the Motion to Quash.[16] On November 2, 2021, the Court held a hearing on the three issues described above and took the Motion under advisement.[17] On January 6, 2022 the Court directed that the parties submit simultaneous briefing on one threshold issue: does OAOA have the authority to conduct a performance audit of Medicaid eligibility, a question of first impression in Delaware.[18] Specifically, the Court instructed the parties' briefings to address the following:

1.     statutory construction (given that the term "postaudits" is not defined, and the term "performance audit" does not appear in Title 29);

2.     the Ohio statute referenced by DHSS – Section 117.19 in Revised Title 1, and any other relevant Ohio statutes;

3.     case law construing/discussing Section 117.19;

---

[13] Letter from Ann C. Cordo, Esquire to the Court (Trans. ID. 67058362).
[14] Motion to Quash Subpoena (Trans. ID. 66865014).
[15] Super. Ct. Civ. R. 45(c)(3)(A)
[16] Response to Motion to Quash Subpoena (Trans. ID. 67046014).
[17] *See* Trans. of Motion to Quash Subpoena (Trans. ID. 67078753).
[18] Letter from the Court dated January 6, 2022 (Trans. ID. 67214766).

4.  statutes in other states addressing or relating to the scope of a State Auditor's authority and/or definitions of "postaudit" and "performance audit;" and

5.  any other authorities supporting the parties' respective positions on the issue of OAOA's authority and the scope of the Subpoena.[19]

DHSS and OAOA, through counsel,[20] filed their Opening Briefs on March 25, 2022. DHSS filed its Reply Brief on April 14, 2022. OAOA filed its Answering Brief on April 14, 2022. On May 27, 2022 counsel for OAOA filed two supplemental exhibits to its Opening Brief.[21] I held oral argument on July 15, 2022. This is my decision on the Motion.

## II.    STANDARDS OF REVIEW

### A. Quashal

The three rule-based grounds for me to quash the Subpoena are if it:

(i)    fails to allow reasonable time for compliance,

(ii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iii)  subjects a person to undue burden.[22]

DHSS has not argued that it was not given a reasonable time to comply with the Subpoena. It has stated that the Subpoena requires the disclosure of certain Personally

---

[19] *Id.*

[20] Until February 21, 2022, OAOA proceeded *pro se* in this matter. OAOA retained counsel only after the Governor's Office and the Delaware Department of Justice ("DOJ") agreed that, due to a DOJ conflict, OAOA could retain special outside counsel. The briefing schedule was subsequently extended.

[21] Letter from Luke W, Mette, Esquire to the Court (Trans. ID. 67668518).

[22] Super. Ct. Civ. R. 45(c)(3)(A)

Identifiable Information with respect to Medicaid beneficiaries, but the parties have apparently worked around that issue and reached an accommodation.[23] Nor has DHSS asserted an undue burden, other than to acknowledge the fact that delivery of the Subpoena items would require time and effort and that the requests were duplicative of those of other government bodies. Nor does DHSS argue that OAOA does not have subpoena power, which is expressly granted to OAOA by the statute.[24] At oral argument, I advised DHSS that, if it had traditional Rule 45 issues, it could present them to me at any time.

Rather, DHSS argues that the Subpoena should be quashed because OAOA "does not have authority to conduct the Audit."[25] OAOA correctly states that, by invoking Rule 45, DHSS bears "the burden to establish a fact-based objection" to show the Subpoena should be quashed.[26] Since OAOA argues that DHSS has not met that burden, OAOA also argues that the Motion should be denied on that basis alone. However, regardless of the vehicle by which it was raised, I will consider and decide the authority issue.

### B. Statutory Construction

---

[23] The parties reached agreement in principle (before counsel was retained by OAOA) for the delivery of several Subpoena categories.
[24] 29 *Del. C.* §2910.
[25] Mot. ¶ 5.
[26] *Del. Dep't of Fin. v. AT&T Inc.*, 239 A.3d 541, 556 (Del. Ch. 2020), *aff'd*, 253 A.3d 537 (Del. 2021).

The question of whether OAOA has the authority to conduct the proposed performance audit of Medicaid eligibility, discussed below, is one of statutory construction. When faced with a novel question of statutory construction, I "must seek to ascertain and give effect to the intention of the legislature as expressed in the statute itself," and should "give the statutory words their commonly understood meanings."[27] "The 'most important consideration for a court in interpreting a statute is [the language] the General Assembly used in writing [the statute].'"[28] When analyzing a statute, it is presumed that "the General Assembly purposefully chose particular language, and the court will therefore construe statutes to avoid surplusage if reasonably possible."[29]

When a statute is found to be clear and unambiguous, the plain meaning of the statutory language controls.[30] "The fact that the parties disagree about the meaning of the statute does not create ambiguity."[31] Rather, a statute is ambiguous "only if it is reasonably susceptible to different interpretations, or 'if a literal reading of the statute

---

[27] *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 230 (Del. 1982).

[28] *Salzberg v. Sciabacucchi*, 227 A.3d 102, 113 (Del. 2020) (quoting *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 950 (Del. Ch. 2013)); *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 542 (Del. 2011) ("[T]his Court's role is to interpret the statutory language that the General Assembly actually adopt[ed], even if unclear and explain what [the Court] ascertain[s] to be the legislative intent without rewriting the statute to fit a particular policy position.").

[29] *Id*. at 117 (citing *Sussex Cty. Dep't of Elections v. Sussex Cty. Republican Comm.*, 58 A.3d 418, 422 (Del. 2013).

[30] *Chase Alexa, LLC v. Kent Cty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010) (citing *Dir. of Rev. v. CAN Hldgs., Inc.*, 818 A.2d 953, 957 (Del. 2003).

[31] *Id*. (quoting *Centaur Partners, IV, v. National Intergroup, Inc.*, 582 A.2d 923, 927 (Del.1990).

would lead to an unreasonable or absurd result not contemplated by the legislature.'"[32]

### C. Weight Given to Agency Interpretation of Statute

In reviewing the propriety of the Subpoena under Title 29, Chapter 29 of the Delaware Code, I am mindful of the Delaware Administrative Procedure Act's deference to OAOA's interpretation of its own enabling statute, which authorizes the Subpoena:

> The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted.[33]

As this Court recently stated:

> The Court engages a *de novo* review of a board or agency's statutory interpretation but "may give appropriate deference to an agency's application of its own rules or regulations."[34]

---

[32] *Id*. (quoting *Dir. of Rev. v. CAN Hldgs.,* Inc., 818 A.2d 953, 957 (Del. 2003).

[33] 29 *Del. C.* §10142(a).

[34] *Ripple v. Delaware Board of Nursing*, 2022 WL 2967227 (Del. Super. July 27, 2022); *see Matter of Scottish Re (U.S.), Inc.*, 273 A.3d 277, 296 (Del. Ch. 2022) (noting further that "[w]hat a court applying Delaware law cannot do is defer to the agency's interpretation 'merely because it is rational or not clearly erroneous' ") (quoting *DiPasquale,* 735 A.2d at 383); s*ee DiPasquale,* 735 A.2d at 383 (a court "may accord due weight, but not defer, to an agency interpretation of a statute administered by it"); *see also State Farm Auto. Ins. Co. v. Mundorf,* 659 A.2d 215, 220 (Del. 1995) ("Although the interpretation of a regulation is ultimately a question of law for a court to decide, substantial weight and deference is accorded to the construction of a regulation enacted by an agency which is also charged with its enforcement.").

Thus, although I will not completely defer to OAOA's interpretation of its enabling statute, but rather consider it *de novo*, I will accord due weight to OAOA's interpretation of the statute administered by it.

## III.   ANALYSIS

### A.   Title 29, Chapter 29

Title 29, Chapter 29 of the Delaware Code sets forth the powers, duties, and obligations of OAOA.

#### 1.  Duties -- §2906

The duties of OAOA are set forth in 29 *Del. C.* §2906(a):

> The Auditor of Accounts shall conduct postaudits of all the financial transactions of all state agencies. Insofar as possible the audits shall be made no less frequently than biennially.[35]

#### 2.  Scope -- §2907

The scope of OAOA's audits is set forth in 29 *Del. C.* §2907:

> (a) The audits shall be sufficiently comprehensive to provide, but not limited to, assurance that reasonable efforts have been made to collect all moneys due the State, that all moneys collected or received by any employee or official have been deposited to the credit of the State and that all expenditures have been legal and proper and made only for the purposes contemplated in the funding acts or other pertinent regulations.
>
> (b) The audits shall be made in conformity with generally accepted auditing principles and practices.[36]

---

[35] 29 *Del. C.* § 2906(a).
[36] 29 *Del. C.* § 2907.

10

### 3. Contents -- §2909

The contents of OAOA's audits are set forth in 29 *Del. C.* §2909:

(a) The Auditor of Accounts shall file written reports covering the Auditor's postaudits with the state agency concerned, the Governor, the General Assembly, the Attorney General and the Director of the Office of Management and Budget; and, if the Auditor deems necessary, the Auditor may present special reports to the General Assembly for consideration and action.

(b) The audit reports shall set forth:

(1) Whether all expenditures have been for the purpose authorized in the appropriations therefor;

(2) Whether all receipts have been accounted for and paid into the State Treasury as required by law;

(3) All illegal and unbusinesslike practices;

(4) Recommendations for greater simplicity, accuracy, efficiency, and economy; and

(5) Such data, information and recommendations as the Auditor of Accounts may deem advisable and necessary.[37]

### 4. Subpoena Power -- §2910

OAOA's subpoena power is set forth in 29 *Del. C.* §2910:

(a) In connection with other powers of the Auditor of Accounts, the Auditor shall have the power to administer oaths and compel the attendance of witnesses and the production of documents by the filing of a praecipe for a subpoena with the Prothonotary of any county of this State.

---

[37] 29 *Del. C.* § 2909.

(b) A subpoena issued under this section shall be effective throughout this State.

(c) Service of such a subpoena shall be made by any sheriff of this State by serving the person to whom it is addressed personally or by leaving it at such person's usual place of abode with a person of suitable age and discretion residing therein.

(d) Failure to obey a subpoena shall be punishable under the Rules of the Superior Court.[38]

At the heart of the instant dispute are DHSS' and OAOA's different understandings of OAOA's powers under Chapter 29. Considering OAOA's duties under §2906(a) and scope of audits under §2907, DHSS argues that OAOA's authority is limited to conducting audits of financial transactions which have already occurred, with the objective of ensuring that the transactions were proper and legal.[39] To support its argument, DHSS notes that the term "postaudit" is not expressly defined in Chapter 29 or any other part of the Delaware Code. DHSS uses the Merriam-Webster Dictionary definition of "postaudit" ("an audit made subsequent to the final settlement of a transaction"), DHSS argues that statutory authority only exists for OAOA to conduct audits after the final settlement *of financial transactions*, and does not expand the scope of OAOA's powers to include "performance audits" of the nature it seeks in the instant

---

[38] 29 *Del. C.* § 2910.
[39] Opening Brief of DHSS, at 3-4 (Trans. ID. 67428579).

matter.[40]  In both its Opening Brief and its Reply Brief, DHSS argued that "performance audits" are not "postaudits" under 29 *Del. C.* § 2906(a).  Only at oral argument on July 15, 2022 did DHSS argue that "performance audits" are not "postaudits *of financial transactions*," although "performance audits" are "postaudits." This is the first time DHSS relied heavily upon the italicized phrase. To me, the Medicaid transactions are financial transactions.

Conversely, OAOA contends that when read in its entirety, including the broad contents of a postaudit under 29 *Del. C.* §2909, the statute provides it with broad auditing powers, including the power to conduct performance audits such as the one in dispute.[41]  According to OAOA, Chapter 29 grants OAOA "broad powers to conduct audits, prepare and submit auditing reports, gather information, and make recommendations and special reports as it deems advisable and necessary."[42]

DHSS uses several principles of statutory construction to support its argument. First, DHSS argues that the language of 29 *Del. C.* § 2906(a), by describing OAOA's duties specifically as conducting "postaudits," and by failing to include the term "performance audit," the legislature designated a narrow scope for OAOA's authority and, by implication, excluded any other types of audits not listed in the language of the

---

[40] *Id*. at 4.
[41] Opening Brief of OAOA, at 9-10 (Trans. ID. 67428577).
[42] *Id*. at 11.

statute.

Second, DHSS argues that, where general words (29 *Del. C.* § 2907) follow the enumeration of particular classes of persons or things (29 *Del. C.* § 2906(a)), the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated."[43] "[S]uch a rule is based on the obvious reason that if it was intended that the general words should be used in their unrestricted sense, no mention would have been made of the particular classes."[44] Thus, argues DHSS, if the legislature had meant for the term "postaudit," or the scope of such postaudit, to have a more general meaning, including the term "performance audit," it would not have followed it with specific classes all relating to financial transactions.

DHSS further argues that the generally accepted accounting principles and practices applicable to OAOA[45] (contained in the "Yellow Book") differentiate between financial audits and performance audits. A financial audit is an assessment of financial statements and results, and a postaudit of financial transactions is a particular form of a financial audit.[46] A performance audit, by contrast, is an "objective analysis, findings,

---

[43] *Donaghy v. State*, 100 A. 696, 707 (Del. 1917).

[44] *Id.*

[45] 29 *Del. C.* § 2907(b) expressly states OAOA audits "shall be made in conformity with generally accepted auditing principles and practices." These principles and practices are set forth in the U.S. Government Accounting Office's ("GAO's") Government Auditing Standards 2018 Rev. (Apr. 2021), (commonly referred to as the "Yellow Book").

[46] Yellow Book §1.17.

and conclusions to assist management and those charged with governance and oversight with, among other things, improving program performance and operations, reducing costs, facilitating decision making by parties."[47]  Thus, DHSS argues that the Yellow Book definitions confirm that a performance audit is not a financial audit, and the Delaware statute permits OAOA to perform only postaudits of financial transactions, a particular form of financial audits, and precludes OAOA from performing performance audits.

To me, this argument is unnecessarily convoluted, and the language of the Delaware statute is clear:  a postaudit is an audit of a transaction or transactions after the fact, and a performance audit is a form of postaudit.  This is exactly what we have here. The statute is not reasonably susceptible to different interpretations, and a literal reading of the statute does not lead to an unreasonable or absurd result not contemplated by the legislature. This reading gives effect to the intention of the legislature as expressed in the statute itself, and gives the statutory words their commonly understood meanings. The most important consideration for me in interpreting the statute is the language the legislature used in writing the statute, and I have assumed that the legislature purposefully chose this particular language.  Thus, it is unnecessary for me

---

[47] *Id.* §1.21.

to use a surplusage of extrinsic accounting industry references[48] and the law of other jurisdictions. Since the statute is clear and unambiguous on its face, the plain meaning of the statutory language controls. The fact that the parties themselves disagree about the meaning of the statute does not in and of itself create ambiguity.

Although I find no ambiguity in the clear language of the statute, my reading is buttressed by several other factors.

## B. Legislative History

I have considered the legislative history of the statute.[49] OAOA was established by the General Assembly in 1783.[50] In 1829, OAOA's duties and powers were expanded to include making an annual report including, *inter alia,* "any information relating to the funds of the State, which he shall consider ought for public good be communicated to the General Assembly."[51] In the 1900s before 1963, the Auditor of Accounts was a member of the Permanent Budget Commission, a body "empowered" by the legislature to "[a]udit, inspect and examine the accounts and the affairs of and the records of any other agency of this State."[52] This broad authority allowed the Commission to

---

[48] I note that nothing in the Audit appears to be inconsistent with the standards set forth in the Yellow Book.

[49] *Chrysler Corp. v. State*, 457 A.2d 345, 351 (Del. 1983) (finding legislative history relevant if the "[s]tatute is ambiguous and requires interpretation").

[50] Act of June 21, 1783, ch. 106, 1783 Del. Laws 22.

[51] Act of Feb. 6, 1829, ch. 187, § 4, 1829 Del. Laws 377, 370–81.

[52] Permanent Budget Commission Act of 1939, § 4(a), 42 Del. Laws 437, 437.

collect "information in any manner pertinent to the fiscal affairs of this State … in such form as it shall prescribe for the purposes of this Act."[53]

In 1963, the legislature abolished the Budget Commission and divided its powers between OAOA and the Budget Director (now known as the Office of Budget and Management). In doing so, the General Assembly amended Section 2906 and specifically explained that "[a]ll of the rights, powers, and duties relative to postauditing, fiscal investigations, and preparation and submission of audit reports" previously ... vested in the Budget Commission are hereby transferred and conferred upon the Auditor of Accounts."[54] The legislature likewise provided the Budget Office with authority related to "pre-auditing, authorization of payments, control of receipts and other related matter."[55]

To facilitate OAOA's ability to obtain "information in any manner pertinent to the fiscal affairs of this State," the legislature has consistently maintained OAOA's subpoena power, first granted in 1783 at §2 and now codified in §2910.

## C. Historical Practice

I have also considered past practices.[56] In 2014, OAOA conducted and

---

[53] *Id*. § 4(b), 42 Del. Laws at 437–38.

[54] Act of May 20, 1963, ch. 39, sec. 11, § 2906, 54 Del. Laws 140, 144–45.

[55] *Id*. § 10, 54 Del. Laws at 143.

[56] *Athey v. Hercules Inc.*, 985 F. Supp. 441, 451 (D. Del. 1997) (finding parties' "past practices" relevant to assigning meaning to ambiguous term).

submitted a Performance Audit of Means-Tested Eligibility Entitlement Programs to the Governor of Delaware.[57] The then-State Auditor referenced Chapter 29 and stated that OAOA conducted the "performance audit" in accordance with generally accepted government accounting standards ("GAGAS") under the Yellow Book.[58] Indeed, the stated objective of OAOA's 2014 performance audit was "to determine the State's ability to manage and monitor the eligibility of recipients of entitlements and ensure adequate controls are in place to help prevent fraud."[59]

OAOA has conducted other performance audits."[60] Each year the Delaware Secretary of Finance submits the Annual Comprehensive Financial Report ("ACFR," formerly "CAFR") "[t]o the Citizens, Governor, and Members of the Legislature of the State of Delaware," and under the heading "Independent Audit" states that OAOA "performs periodic financial and compliance audits of various State … agencies."[61]

In 2020, OAOA conducted an investigation into allegations of violations of

---

[57] Performance Audit of Means-Tested Eligibility Entitlement Programs (Mar. 11, 2014).

[58] *Id.*

[59] *Id.* at i.

[60] *See generally* OAOA Performance Audit Spreadsheet (including a 2018 Delaware Career and Technical Education Performance Audit, a 2019 Pension Death Master File Performance Audit, two Fiscal Year 2018 Higher Education Procurement Card Performance Audits, and twenty school district Criminal Background Checks Performance Audits for the period 2014 to 2019); *see also* How is Delaware Using Consultants? (OAOA Performance Audit of Division of Facilities Management consulting contracts from 2009 to 2010, pursuant to Chapter 29); Mariner Middle School Band Boosters (OAOA Performance Audit of student activity funds from 2009 to 2010, pursuant to Chapter 29).

[61] *See, e.g.*, Secretary of Finance 2021 Report Cover Letter at *vii*.

Delaware law by the Controller of Delaware's Department of Insurance ("DOI"), following an internal complaint regarding certain business practices of the Controller.[62] The scope of work for that investigation included examining possible violations of Delaware law, the State of Delaware's Budget and Accounting Manual ("BAM") (including specifically BAM's internal control requirements), and state policies regarding acceptable use and information security.[63] The cost of that investigation was billed to DOI.[64]

### D. Other Jurisdictions

This Court requested briefing on other states' auditor authority and definitions of "postaudit" or "performance audit." The National Association of State Auditors, Controllers and Treasurers ("NASACT") publishes an annual summary of auditing in the states.[65] The briefs fully discussed statutes in Alabama, Hawaii, Idaho, Illinois, Michigan, Missouri, New York, Ohio, Pennsylvania, Washington, and Wisconsin, and contained a tabulation of the statutes in all jurisdictions.

46 states expressly authorize the state auditor (or similar official) to conduct

---

[62] *See generally* Department of Insurance Improper Activities of Controller (OAOA Investigation into credential sharing, unauthorized use, check deposits, purchases, refunds, internal controls, and travel made by DOI Controller from July 1, 2017, through October 31, 2019).
[63] *Id.*
[64] *Id.*
[65] NASACT, Auditing in the States (2021) at 1–2.

performance audits by: (i) using the term "audit" instead of the term "postaudit"; (ii) providing a broader definition of postaudit; or (iii) expressly authorizing performance audits. DHSS argues that since Delaware is one of only four states that does not have this scheme, it follows *a fortiori* that the legislature did not intend for OAOA to conduct performance audits. I disagree. The statute speaks for itself, as discussed above.

## IV.    CONCLUSION

For the foregoing reasons, the Delaware Department of Health and Social Services' Motion to Quash the Subpoena of the Delaware Office of Auditor of Accounts is **DENIED**. If DHSS has residual issues or concerns under Rule 45, it is free to bring them to my attention.

**IT IS SO ORDERED**.


<u>/s/ Craig A. Karsnitz</u>


cc:    Prothonotary

20