IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HILL INTERNATIONAL, INC., | § | |
| DAVID L. RICHTER, CAMILLE S. | § | |
| ANDREWS, BRIAN W. CLYMER, | § | No. 305, 2015 |
| ALAN S. FELLHEIMER, IRVIN E. | § | |
| RICHTER, STEVEN M. KRAMER | § | |
| and GARY F. MAZZUCCO, | § | Court Below: |
| | § | |
| Defendants Below, | § | Court of Chancery of the |
| Appellants, | § | State of Delaware |
| | § | |
| v. | § | C. A. No. 11025-VCL |
| | § | |
| OPPORTUNITY PARTNERS L.P., | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: July 1, 2015
Decided: July 2, 2015

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Court of Chancery. **AFFIRMED**.

Stephen P. Lamb, Esquire (*argued*), Daniel A. Mason, Esquire, Matthew D. Stachel, Esquire, and Laura Bower Braunsberg, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Wilmington, Delaware; Richard L. Renck, Esquire, and Oderah C. Nwaeze, Esquire, Duane Morris LLP, Wilmington, Delaware; Of Counsel: Dana B. Klinges, Esquire, Duane Morris LLP, Philadelphia, Pennsylvania, for Appellants.

Carmella P. Keener, Esquire, and P. Bradford deLeeuw, Esquire, Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware; Of Counsel: Carol S. Shahmoon, Esquire (*argued*), Shahmoon & Ellisen LLP, New York, New York, for Appellee.

**VALIHURA**, Justice:

# I. INTRODUCTION

Defendants below, Appellants, Hill International, Inc. ("Hill" or the "Company"), David L. Richter, Camille S. Andrews, Brian W. Clymer, Alan S. Fellheimer, Irvin E. Richter, Steven M. Kramer and Gary F. Mazzucco (collectively, the "Individual Defendants," and together with Hill, the "Company Defendants") seek review of Court of Chancery orders dated June 5, 2015 and June 16, 2015.

In its June 5, 2015 Order, the Court of Chancery enjoined Hill from conducting any business at its June 9, 2015 Annual Meeting, other than convening the meeting for the sole purpose of adjourning it for a minimum of 21 days, in order to permit plaintiff below, Appellee, Opportunity Partners L.P. ("Opportunity"), to present certain items of business and director nominations at Hill's 2015 Annual Meeting. On June 16, 2015, the Court of Chancery entered the Order dated June 5, 2015 as a partial final judgment pursuant to Court of Chancery Rule 54(b).

This expedited appeal requires us to resolve a dispute over the proper interpretation of certain provisions of Articles II and III of Hill's Bylaws as Amended and Restated on November 12, 2007 (the "Bylaws"). The sections of the Bylaws at issue, specifically language in Sections 2.2 and 3.3, concern the operative date for determining the time within which stockholders must give notice

of any shareholder proposals or director nominees to be considered at Hill's upcoming annual meeting (the "Advance Notice Bylaws").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to our resolution of the legal issue on appeal are not in dispute.

Hill is a Delaware corporation headquartered in Philadelphia, Pennsylvania. Hill, one of the largest construction management firms in the United States, provides program, project and construction management, and construction claims and other consulting services to the buildings, transportation, environmental, energy and industrial markets. The Individual Defendants are all members of Hill's Board of Directors. Irvin E. Richter is the Chairman of the Board and David L. Richter is Hill's President and Chief Executive Officer.

Opportunity is an Ohio limited partnership that owns shares of Hill's common stock. Opportunity is an affiliate of Bulldog Investors, LLC ("Bulldog"), a registered investment advisor that beneficially owns approximately 5.53% of Hill's common stock as indicated in its Schedule 13D filings. Bulldog's owners include Opportunity's two proposed nominees to Hill's Board of Directors: Phillip Goldstein and Andrew Dakos. According to Hill, Bulldog is a sophisticated activist stockholder who has been involved in 169 contests involving 139 entities since 1997.

On April 30, 2014, Hill publicly disclosed in its 2014 Definitive Proxy Statement filed with the Securities and Exchange Commission that it anticipated holding its 2015 Annual Meeting "on or about June 10, 2015." The proxy statement stated that stockholders who wished to submit a proposal for the 2015 Annual Meeting "must submit [their] proposal no earlier than March 15, 2015 and no later than April 15, 2015."

On April 13, 2015, Opportunity delivered a letter to Hill in which it gave notice of its intent to present two shareholder proposals for consideration and two nominees for election to the Board of Directors at Hill's 2015 Annual Meeting (the "April 13 Letter").

On April 30, 2015, Hill filed its 2015 Definitive Proxy Statement with the Securities and Exchange Commission, and announced that the 2015 Annual Meeting would be held at 9:00 a.m. on Tuesday, June 9, 2015. This was the first time Hill disclosed the actual date of the 2015 Annual Meeting -- as opposed to an anticipated time frame.

On May 5, 2015, Hill asserted that Opportunity's April 13 Letter did not comply with the Bylaws because it did not contain information about the director nominees as required by Section 3.3 of Hill's Bylaws.

On May 7, 2015, Opportunity delivered another letter to Hill in which it gave notice of its intent to present at the 2015 Annual Meeting two new

shareholder proposals for consideration and the same two director nominees for election to Hill's Board (the "May 7 Notice"). On May 11, 2015, Hill notified Opportunity that the May 7 Notice was untimely under Sections 2.2 and 3.3 of Hill's Bylaws.

### Hill's Advance Notice Bylaws

The Advance Notice Bylaws are contained in Sections 2.2 and 3.3 of Hill's Bylaws. Section 2.2 of the Bylaws (the "Stockholder Business Bylaw") states in relevant part:

> The annual meeting of stockholders shall be held on such date and at such time as may be fixed by the Board of Directors and stated in the notice of the meeting, for the purpose of electing directors and for the transaction of only such other business as is properly brought before the meeting in accordance with these Bylaws (the "Bylaws").
>
> Written notice of an annual meeting stating the place, date and hour of the meeting, shall be given to each stockholder entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the annual meeting.
>
> . . .
>
> In addition to any other applicable requirements, for business to be properly brought before an annual meeting by a stockholder, the stockholder must have given timely notice thereof in writing to the Secretary of the Corporation. To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation not less than sixty (60) days nor more than ninety (90) days prior to the meeting; *provided, however, that in the event that less than seventy (70) days notice or prior public disclosure of the date of the annual meeting is given or made to stockholders, notice by a stockholder, to be timely, must be received no later than the close of business on the tenth (10th) day following the day on*

4

*which such notice of the date of annual meeting was mailed or such public disclosure was made, whichever first occurs.*[1]

For convenience, we refer to the language italicized above as the "70-Day Provision" of the Stockholder Business Bylaw.

Section 3.3 of the Bylaws (the "Nomination Bylaw") states in relevant part:

Nominations of persons for election to the Board of Directors of the Corporation at a meeting of stockholders of the Corporation may be made at such meeting by or at the direction of the Board of Directors, by any committee or persons appointed by the Board of Directors or by any stockholder of the Corporation entitled to vote for the election of directors at the meeting who complies with the notice procedures set forth in this Article III, Section 3. Such nominations by any stockholder shall be made pursuant to timely notice in writing to the Secretary of the Corporation. To be timely, a stockholder's notice shall be delivered to or mailed and received at the principal executive offices of the Corporation not less than sixty (60) days nor more than ninety (90) days prior to the meeting; *provided however, that in the event that less than seventy (70) days notice or prior public disclosure of the date of the meeting is given or made to stockholders, notice by the stockholder, to be timely, must be received no later than the close of business on the tenth (10th) day following the day on which such notice of the date of the meeting was mailed or such public disclosure was made, whichever first occurs.*[2]

For convenience, we refer to the language italicized above as the "70-Day Provision" of the Nomination Bylaw. We refer to the 70-Day Provision in the Stockholder Business Bylaw and the Nomination Bylaw, collectively, as the "70-Day Provisions."

---

[1] App. to Opening Br. at A6-7 (Bylaws § 2.2).

[2] App. to Opening Br. at A10 (Bylaws § 3.3).

5

Thus, under Hill's Bylaws, in order for a stockholder to properly bring business before an annual meeting, the stockholder must give timely, written notice of such business to the Secretary of the Company. Generally, the Advance Notice Bylaws require stockholder notice to be given within the 30-day window between 60 and 90 days before the date of the annual meeting (the "30-Day Window"); except, if the notice or public disclosure of the date of the annual meeting occurs fewer than 70 days before the date of the annual meeting, then the stockholder notice must be given within ten days from the date of the notice or public disclosure of the date of the annual meeting (the "10-Day Notice Period").

### 1. Hill's Interpretation of its Advance Notice Bylaws

Hill argues that it gave more than 70 days' notice of its 2015 Annual Meeting and that the 10-Day Notice Period does not apply. In its Definitive Proxy Statement for the 2014 Annual Meeting, Hill stated:

> We *anticipate* that we will hold our 2015 Annual Meeting of Stockholders *on or about June 10, 2015*. . . . If you wish to submit a proposal for the 2015 Annual Meeting of Stockholders which will not be included in the [Company's] proxy statement for such meeting, you must submit your proposal no earlier than March 15, 2015 and no later than April 15, 2015.[3]

Hill contends that this disclosure constituted "prior public disclosure of the date" of the annual meeting. Since this disclosure was made more than 70 days before the date of the 2015 Annual Meeting, Hill argues that Opportunity's notice of

---

[3] App. to Opening Br. at A53 (2014 Proxy Statement) (emphasis added).

business had to be submitted within the 30-Day Window.[4]  Consequently, Hill rejected as untimely Opportunity's May 7 Notice, which was submitted after the closing of the 30-Day Window.

### 2.    *Opportunity's Interpretation of the Advance Notice Bylaws*

Opportunity argues that its May 7 Notice was timely under the Advance Notice Bylaws, despite being delivered fewer than 60 days prior to June 9, 2015. It relies on the 10-Day Notice Period contained in the 70-Day Provisions, and contends that the 2014 Proxy Statement's reference to an anticipated annual meeting "on or about June 10, 2015" does not constitute "prior public disclosure of the date" of the annual meeting under the Advance Notice Bylaws.  Rather, it contends that Hill first gave notice of *the date of the annual meeting* on April 30, 2015, because that was the first time Hill specifically identified June 9, 2015 as the actual date of its annual meeting.  Since April 30, 2015 is 40 days before June 9,

---

[4] Hill contends that this "prior public disclosure" was consistent with every proxy statement Hill has ever issued.  It argues that its stockholders would have understood that the 2015 Annual Meeting would be held "on or about June 10, 2015," and thus, Opportunity should have planned accordingly.  Hill points out that the 2014 Proxy Statement even listed an estimated date range of March 15 to April 15, 2015 for the submission of stockholder proposals.  Yet Hill concedes that even Hill miscalculated its own range of dates in its proxy statement.  The window for giving stockholder notice of proposed business under Hill's Bylaws would have been March 12, 2015 to April 11, 2015 -- anticipating a June 10, 2015 annual meeting.  If Opportunity's April 13 Letter had not been superseded, the April 13 Letter would have been timely according to the dates in Hill's 2014 Proxy Statement, but would not have been timely under the Bylaws.  Hill also argues that the April 13 Letter was deficient in certain respects and does not constitute valid stockholder notice of business under the Bylaws.  However, because the May 7 Notice states that the April 13 Letter was superseded by the May 7 Notice, and because the court below did not otherwise consider the validity of the April 13 Letter, we do not consider it here.

7

2015 -- fewer than the 70 days that would have been required for the 30-Day Window to apply -- Opportunity argues that the 10-Day Notice Period applies. Thus, Opportunity contends that its May 7 Notice was timely because it was submitted within 10 days after the April 30, 2015 announcement.

### *The Court of Chancery Proceedings*

On May 14, 2015, Opportunity filed suit in the Court of Chancery seeking declaratory relief. On the same day, Opportunity filed a Motion for Preliminary Injunction requesting, among other relief, that the Court of Chancery order the Company Defendants to "refrain from interfering with [Opportunity]'s presentation of its director nominees Andrew Dakos and Phillip Goldstein, as well as its shareholder proposals previously provided to the Company, or ruling them 'out of order' and/or disregarded at the Company's 2015 annual meeting," and to "reschedule the June 9, 2015 meeting until the fiduciary violations alleged in the Complaint in this action are cured and a fair proxy contest can be conducted."

On June 5, 2015, the Court of Chancery held oral argument on Opportunity's motion for preliminary injunctive relief. The Court of Chancery, in construing Hill's Advance Notice Bylaws, determined that "[t]he operative date for determining the time within which the stockholders must give notice is the *actual*

*date of the meeting*."[5]   It reasoned that the plain meaning of "prior public disclosure" contemplates a public filing that states the date of the meeting; but like a formal notice, it must state the actual date of the meeting.  In other words, "[t]he stockholders must know when to show up so that a specific range of dates for compliance with the Advance Notice Bylaws can be calculated."[6]

Accordingly, the Court of Chancery held that the 30-Day Window was not triggered by the 2014 Proxy Statement since it "gave a range of dates for submitting proposals assuming the annual meeting happened 'on or about' the anticipated date."[7]  The Advance Notice Bylaws "based the requisite time period off the actual date of the meeting, not a possible future date."[8]  As a result, the Court of Chancery concluded that Opportunity's May 7 Notice was timely.[9]

Thus, the Court of Chancery granted Opportunity's motion and entered an order enjoining Hill from conducting any business at the Annual Meeting on June 9, 2015, other than convening the meeting for the sole purpose of adjourning it for a minimum of 21 days.  It then directed Hill to "permit [Opportunity] to present the items of business and nominations set forth in the [May 7] Notice" at Hill's 2015

---

[5] *Opportunity Partners L.P. v. Hill Int'l Inc. et al.*, C.A. No. 11025-VCL DI 24, at *4 (Del. Ch. Jun. 5, 2015) (emphasis added).

[6] *Id.* at *5.

[7] *Id.*

[8] *Id.* at *6.

[9] In the proceedings below, Hill did not dispute that the May 7 Notice otherwise complied with the requirements of the Advance Notice Bylaws.

Annual Meeting.[10] The court further held that "the undisputed facts are sufficient to support a grant of summary judgment and hence entitle [Opportunity] to mandatory injunctive relief," and that "[i]n light of this holding, the court need not reach any of the arguments about whether the defendants have acted inequitably."[11] The Court of Chancery expressly stated that the mandatory injunction was not conditioned on the posting of any security.

In response, on June 10, 2015, Hill filed a Motion for Entry of Partial Final Judgment under Court of Chancery Rule 54(b),[12] or alternatively, an Application for Certification of Interlocutory Appeal under Supreme Court Rule 42. Hill also moved for expedited consideration of its motion in order to immediately appeal the Court of Chancery's June 5, 2015 Order granting injunctive relief. Opportunity opposed Hill's motions.

Under the standard for entering a partial final judgment under Rule 54(b), the Court of Chancery was required to find that (1) the action involves multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally decided, and (3) that there is no just reason for delaying an

---

[10] *Opportunity Partners*, C.A. No. 11025-VCL DI 24, at *7 (Del. Ch. Jun. 5, 2015).

[11] *Id.* at *6. Because the court below did not address the issues about whether the Company Defendants acted inequitably, we do not consider them here.

[12] Court of Chancery Rule 54(b) provides, in relevant part, that "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the Court may direct the entry of a final judgment upon one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

appeal.[13]   The Court of Chancery found that the first two elements were easily met. The June 5, 2015 Order ruled on the plain language of the Advance Notice Bylaws, and effectively granted summary judgment in favor of Opportunity by providing mandatory injunctive relief.

In addressing the third element -- whether there is just reason for delaying the appeal -- the Court of Chancery exercised appropriate caution in taking note of our long established policy against piecemeal appeals.[14]   We reiterate our policy against piecemeal appeals, but conclude that the Court of Chancery was correct in determining that the criteria are met here, and that providing an opportunity for timely appellate review of its mandatory injunction is important to an orderly

---

[13] *See In re Tri-Star Pictures, Inc., Litig.*, 1989 WL 112740, at *1 (Del. Ch. Sept. 26, 1989).

[14] *See, e.g.*, *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 580 (Del. 2002) ("The policy underlying the final judgment rule is one of efficient use of judicial resources through disposition of cases as a whole, rather than piecemeal." (citing *Showell Poultry, Inc. v. Delmarva Poultry Corp.*, 146 A.2d 794, 795 (Del. 1958))); *Simmons v. Simmons*, 1992 WL 397461, at *1 (Del. Nov. 12, 1992) (noting the "strong policy of this Court not to accept piecemeal appeals from a single proceeding in a trial court"); *see also Zimmerman v. Home Shopping Network, Inc.*, 1990 WL 140890, at *1 (Del. Ch. Sept. 25, 1990) ("Rule 54(b) is not to be used as a vehicle to trigger routine appellate review in cases where summary judgment is granted as to some, but not all, of a party's claims.   Rather, Rule 54(b) is an exception to the well-established policy against 'piecemeal' appeals, and does not contemplate the entry of final judgment absent a showing of some degree of hardship or injustice through delay which would be alleviated by immediate appeal." (internal citations and quotations omitted)); *In re Tri-Star Pictures, Inc., Litig.*, 1989 WL 112740, at *1 ("The long established policy against piecemeal appeals requires that this Court exercise that discretion sparingly.").   In this same spirit, this Court recently revised Supreme Court Rule 42(b) governing interlocutory appeals to make clear that interlocutory appeals are "exceptional" and "not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."

11

meeting process.[15]  Moreover, the issue is narrow, and the June 5, 2015 Order effectively resolved the parties' central dispute concerning the construction of the Advance Notice Bylaws.  Acting expeditiously, the Court of Chancery issued its June 16, 2015 Order Entering Partial Final Judgment pursuant to Court of Chancery Rule 54(b).

On June 16, 2015, Hill filed a notice of appeal seeking review of both the June 5, 2015 and June 16, 2015 Orders.  It simultaneously filed a Motion for Expedited Proceedings on Appeal.  This Court granted Hill's motion to expedite, ordered accelerated briefing, and set the matter for oral argument on July 1, 2015.

### III.    ANALYSIS

The fundamental issue on appeal is whether Hill's public disclosure in its 2014 Proxy Statement that its 2015 Annual Meeting would be held "on or about June 10, 2015" constituted "prior public disclosure of the date" of the annual meeting within the meaning of the 70-Day Provisions in the Advance Notice Bylaws.  If so, the Bylaws' 30-Day Window for timely stockholder notice would be triggered, requiring Opportunity to submit its notice of business between March 12 and April 11, 2015.  If not, the Bylaws' 10-Day Notice Period for timely

---

[15] *See Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 659 (Del. Ch. 1988) (observing that "[t]he shareholder franchise is the ideological underpinning upon which the legitimacy of directorial power rests" and that "it can be seen that matters involving the integrity of the shareholder voting process involve consideration not present in any other context in which directors exercise delegated power").

stockholder notice would be triggered, requiring Opportunity to submit its notice of business within ten days after Hill announced the actual date of its 2015 Annual Meeting (*i.e.*, between April 30 and May 10, 2015).

Although a trial court's decision to grant or refuse injunctive relief is generally reviewed for an abuse of discretion, this Court does "not defer to the trial court on embedded legal conclusions and reviews them *de novo*."[16] "[T]he construction or interpretation of a corporate certificate or by-law is a question of law subject to *de novo* review by this Court."[17] Further, "[b]ecause the facts material to these claims are uncontroverted, the issues presented are all essentially questions of law that this Court reviews *de novo*."[18]

The bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers and stockholders formed within the statutory framework of the Delaware General Corporation Law.[19] Because corporate charters and bylaws are contracts, our rules of contract interpretation apply.[20]

---

[16] *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 380-81 (Del. 2014) (citations omitted).

[17] *Centaur Partners, IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 926 (Del. 1990) (citing *Gilbert v. El Paso Co.*, 575 A.2d 1131, 1141-42 (Del. 1990)).

[18] *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010) (quoting *B.F. Rich & Co., Inc. v. Gray*, 933 A.2d 1231, 1241 (Del. 2007)).

[19] *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 939 (Del. Ch. 2013); *see also Airgas*, 8 A.3d at 1188; *Lawson v. Household Fin. Corp.*, 152 A. 723, 726 (Del. 1930).

[20] *Airgas*, 8 A.3d at 1188; *see also Centaur Partners*, 582 A.2d at 928 ("Corporate charters and by-laws are contracts among the shareholders for corporations and the general rules of contract interpretation are held to apply." (citing *Berlin v. Emerald Partners*, 552 A.2d 482, 488 (Del.

"Words and phrases used in a bylaw are to be given their commonly accepted meaning unless the context clearly requires a different one or unless legal phrases having a special meaning are used."[21] "Under the applicable interpretation rules, if the bylaw's language is unambiguous, the court need not interpret it or search for the parties' intent."[22] In that case, "[t]he bylaw is construed as it is written, and the language, if simple and unambiguous, is given the force and effect required."[23] If charter or bylaw provisions are unclear, we resolve any doubt in favor of the stockholder's electoral rights.[24]

In this case, we conclude that Hill's Advance Notice Bylaws are clear and unambiguous, and that the Company Defendants' arguments are without merit. The Court of Chancery acted properly in construing the language of the 70-Day Provisions in the Advance Notice Bylaws in accordance with its plain meaning.[25]

This appeal requires us to determine whether Opportunity's May 7 Notice was timely submitted in accordance with the Advance Notice Bylaws. A key question we must resolve is whether Hill's 2014 Proxy statement constituted "prior

1989); *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 342-43 (Del. 1983); *Ellingswood v. Wolf's Head Oil Refining Co., Inc.*, 38 A.2d 743, 747 (Del. 1944)).

[21] *Airgas*, 8 A.3d at 1188 (quoting *Hibbert*, 457 A.2d at 343).

[22] *Openwave Sys. Inc. v. Harbinger Capital Partners Master Fund I, Ltd.*, 924 A.2d 228, 239 (Del. Ch. 2007) (citing *Hibbert*, 457 A.2d at 343).

[23] *Openwave Sys.*, 924 A.2d at 239.

[24] *Airgas*, 8 A.3d at 1188 (citing *Centaur Partners*, 582 A.2d at 927).

[25] CORBIN ON CONTRACTS § 32.3 (2003) ("The plain, common, or normal meaning of language will be given to the words of a contract. . . .").

public disclosure of the date" of Hill's 2015 Annual Meeting. The parties raise only two possibilities for determining the date upon which Hill first gave "notice or prior public disclosure of the date" of its 2015 Annual Meeting: either Hill's 2014 Proxy Statement was the first "public disclosure of the date" of the annual meeting as the Company Defendants contend, or Hill's April 30, 2015 Proxy Statement was the first "notice . . . of the date" of the annual meeting as Opportunity contends.

We turn to the language of the 70-Day Provisions to resolve this timeliness issue. The Stockholder Business Bylaw and the Nomination Bylaw each allow for the possibility of Hill providing less than 70 days' notice of its annual meeting. For example, the 70-Day Provision in Stockholder Business Bylaw provides:

> . . . in the event that less than seventy (70) days notice or prior public disclosure of *the date* of the annual meeting is given or made to stockholders, notice by a stockholder, to be timely, must be received no later than the close of business on the tenth (10th) day following the day on which such notice of the date of the annual meeting was mailed or such public disclosure was made, whichever first occurs.[26]

The corresponding 70-Day Provision in the Nomination Bylaw is nearly identical.[27]

---

[26] App. to Opening Br. at A7 (Bylaws § 2.2) (emphasis added).

[27] *See supra* text accompanying footnote 2. Although the Stockholder Business Bylaw refers to the "date of the annual meeting," the Nomination Bylaw refers to the "date of the meeting." The differences are immaterial for the purposes of our resolution of the issues here. In addition, we agree with the Vice Chancellor that "prior public disclosure" as used in the 70-Day Provisions must mean something other than the statutory notice required by 8 *Del. C.* § 222. Section 222 of the Delaware General Corporation Law provides that, "[u]nless otherwise provided in this chapter, the written notice of any meeting shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder entitled to vote at such meeting as of the

15

Here, the parties do not dispute that the plain meaning of "prior public disclosure" includes a public filing[28] -- such as Hill's 2014 Proxy Statement. Thus, in order to determine whether the 2014 Proxy Statement provided prior public disclosure of the date of Hill's 2015 Annual Meeting, we must determine whether the language in the 70-Day Provisions in the Advance Notice Bylaws that triggers the 30-Day Window requires the notice or prior public disclosure of the *actual date* on which the corporation holds its annual meeting, or whether it merely requires the notice or prior public disclosure of the *anticipated date* of the corporation's annual meeting.

---

record date for determining the stockholders entitled to notice of the meeting." 8 *Del. C.* § 222(b). Because statutory notice cannot be given 70 or more days before the meeting, "prior public disclosure" must mean something other than statutory notice.

[28] In certain cases, questions of the sufficiency of other types of public disclosures have arisen. *See, e.g.*, *Am. Gen. v. Torchmark Corp.*, 1990 WL 10712372 (5th Cir. 1999). There, the United States Court of Appeals for the Fifth Circuit, applying Texas law, construed a similar advance notice bylaw where the first notice of American General's annual meeting date was contained in the company's 12-month earnings circular that was mailed to stockholders by third-class mail, and was not filed with the Securities and Exchange Commission. The Fifth Circuit found that although Torchmark had received the circular more than the requisite 70 days before the meeting, American General's notice of the date of the meeting was not sufficient to trigger the 60-day notice requirement of its advance notice bylaw. As a result, Torchmark's notice of intent to nominate director candidates, which was given within 10 days after the formal notice of meeting and proxy statement were mailed, was deemed timely under American General's advance notice bylaw. The Fifth Circuit noted that the circular had failed to disclose that the size of American General's board had been expanded and it considered potentially relevant, but not determinative, the fact that the circular had been mailed before the record date. Here, the parties do not dispute that the 2014 Proxy Statement suffices as a "public disclosure" within the meaning of Hill's Advance Notice Bylaw.

The plain meaning of "the date" means a specific day -- not a range of possible days.[29] The 2014 Proxy Statement's reference to "on or about June 10, 2015" does not refer to "the date" of Hill's 2015 Annual Meeting. Rather, "on or about" refers to an approximate, anticipated, or targeted time frame that is intended to encompass more than one "date" -- *i.e.*, June 10 -- apparently in order to give Hill some flexibility in scheduling.[30] Thus, the 2014 Proxy Statement did not provide "prior public disclosure of the date" of Hill's 2015 Annual Meeting. Indeed, when Hill's Board of Directors did fix the annual meeting date, they designated a different date for the 2015 Annual Meeting -- June 9, 2015.

On March 12, 2015, Hill's Board of Directors fixed the time and date of the annual meeting for 9:00 a.m. on Tuesday, June 9, 2015, but did not publicly disclose the date at the time. On April 30, 2015, Hill filed its 2015 Definitive Proxy Statement. In it, Hill publicly disclosed the actual date of its 2015 Annual

---

[29] *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195-1196 (Del. 1992) ("Clear and unambiguous language in [a contract] should be given its ordinary and usual meaning. Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it. [W]hen the language of a [contract] is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." (internal citations and quotations omitted)).

[30] *See* 17A C.J.S. CONTRACTS § 481 (2015) ("A promise to perform 'on or about' a certain date means approximately, and not exactly, on that date, or within a reasonable time after that date." (citations omitted)); BLACK'S LAW DICTIONARY 1198 (9th ed. 2009) ("on or about. Approximately; at or around the time specified. This language is used in pleading to prevent a variance between the pleading and the proof, usu. when there is any uncertainty about the exact date of a pivotal event. When used in nonpleading contexts, the phrase is mere jargon.").

Meeting for the first time. Notably, by that time, the 30-Day Window between March 12 and April 11, 2015 had already expired.

Because Hill's April 30, 2015 notice to stockholders was 40 days before the June 9, 2015 annual meeting date, the 10-Day Notice Period contained in the 70-Day Provisions was triggered. Accordingly, Opportunity was required to submit its shareholder proposals and director nominees no later than the close of business ten days following April 30, 2015 -- *i.e.*, by May 10, 2015. Because Opportunity delivered its May 7 Notice three days before the expiration of the 10-Day Notice Period, the May 7 Notice was timely.[31]

The Court of Chancery's grant of mandatory injunctive relief was based upon its interpretation of the Advance Notice Bylaws, which, as explained above,

---

[31] Hill argues that if a corporation relies on statutory notice pursuant to 8 *Del. C.* § 222 for giving notice of its annual meeting, then advance notice bylaws that provide for a 60 to 90 days opening and closing deadline could be in conflict. *See* 8 *Del. C.* § 222(b) ("Unless otherwise provided in this chapter, the written notice of any meeting shall be given *not less than 10 nor more than 60 days before the date of the meeting* to each stockholder entitled to vote at such meeting as of the record date for determining the stockholders entitled to notice of the meeting." (emphasis added)). This Court is not persuaded that our ruling will have the doomsday consequences that Hill predicts. Although this form of bylaw may be common, Hill could have triggered the 30-Day Window requiring 60-90 days advance notice of shareholder proposals and director nominees by announcing the actual date of the annual meeting earlier -- for example, on March 12, 2015 when Hill's Board of Directors met and fixed the date of the 2015 Annual Meeting. Because Hill waited to announce the actual date, the 10-Day Notice Period applies. Hill's counsel also acknowledged other common forms of advance notice bylaws that avoid such a "conflict" by pegging the notice period for timely stockholder proposals and director nominees to the anniversary date of the corporation's prior annual meeting.

18

we have concluded was correct. Thus, we find no error in the Court of Chancery's grant of relief in favor of Opportunity.[32]

## IV. CONCLUSION

Based upon the forgoing, the judgment of the Court of Chancery is hereby AFFIRMED.

---

[32] The Company Defendants maintain that the Court of Chancery's refusal to condition the injunction on the posting of security was an abuse of discretion. The June 5, 2015 Order was entered by the Court of Chancery as a partial final judgment, which the Company Defendants appealed. Based upon our review of the record, the Company Defendants did not specifically address the security issue in the proceedings below. We have held that the party seeking security must support its application with facts or some realistic, as opposed to a yet-unproven, legal theory from which damages could flow to the party enjoined. *See Guzzetta v. Serv. Corp. of Westover Hills*, 7 A.3d 467, 470 (Del. 2010). Because we are reviewing the entry of a partial final judgment, and given the failure of the Company Defendants to fairly present this issue below, we need not address it here, except to observe that we see no error in the trial court's ruling given its observation that Hill might incur certain costs associated with postponing the annual meeting and resoliciting proxies, but that this harm was "not substantial and can be mitigated by permitting the Company to convene the Annual Meeting for the sole purpose of adjourning it to [a] later date." *Opportunity Partners L.P. v. Hill Int'l Inc. et al.*, C.A. No. 11025-VCL DI 24, at *6-7 (Del. Ch. Jun. 5, 2015).