# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0595-LWW |
| | ) | |
| MATTERPORT, INC., MATTERPORT OPERATING, LLC, R.J. PITTMAN, DAVID GAUSEBECK, MATT BELL, PETER HEBERT, JASON KRIKORIAN, CARLOS KOKRON, AND MICHAEL GUSTAFSON, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted:  December 21, 2021
Date Decided:  January 10, 2022

Thomas A. Uebler and Joseph Christensen, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; Edward D. Totino and Benjamin W. Turner, BAKER MCKENZIE LLP, Los Angeles, California; *Counsel for Plaintiff William J. Brown*

Robert L. Burns and Daniel E. Kaprow, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Michele Johnson and Kristin Murphy, LATHAM & WATKINS LLP, Costa Mesa, California; Colleen Smith, LATHAM & WATKINS LLP, San Diego, California; *Counsel for Defendants Matterport, Inc., Matterport Operating LLC, R.J. Pittman, David Gausebeck, Matt Bell, Peter Hebert, Jason Krikorian, Carlos Kokron, and Michael Gustafson*

**WILL, Vice Chancellor**

This matter concerns trading restrictions adopted in connection with a transaction between defendant Matterport Operating, LLC ("Legacy Matterport") and a special purpose acquisition company (or SPAC). The SPAC adopted amended bylaws imposing the restrictions before the business combination closed. The plaintiff, a former officer of Legacy Matterport, contends that the restrictions were adopted without his consent in violation of Section 202(b) of the Delaware General Corporation Law. He also asserts that the challenged bylaw provision does not apply to him by its plain terms. In addition to seeking declaratory relief as to the validity of the restrictions, the plaintiff brings breach of fiduciary claims against Legacy Matterport's former directors.

The matter was bifurcated so that the question of whether the plaintiff is bound by the transfer restrictions could be resolved before they expire in mid-January 2022. An expedited trial was held on that limited issue and is resolved by this decision. I find that the plaintiff has proven by a preponderance of evidence that he owns unrestricted shares in defendant Matterport, Inc. ("Matterport"), the entity that survived the de-SPAC transaction. Accordingly, the plaintiff may freely trade his Matterport shares. The remaining claims and issues will be addressed in a subsequent stage of the proceeding.

## I.    RELEVANT BACKGROUND[1]

Plaintiff William J. Brown served as the Chief Executive Officer of Legacy Matterport, a privately held spatial data company, from November 2013 to December 2018.[2]  Over his five years at Legacy Matterport, Brown received equity compensation in the form of stock options, granting him the right to purchase 1,350,000 shares of Legacy Matterport.  He also purchased 37,000 restricted shares as a bonus in 2014.[3]  Brown exercised all of his options on October 6, 2020.[4]

Gores Holding VI, Inc. ("Gores"), a special purpose acquisition company, and Legacy Matterport agreed to a business combination (or de-SPAC merger) on February 7, 2021.[5]  Following a series of transactions, Gores—to be renamed Matterport upon closing—would be the surviving entity and Legacy Matterport would become a wholly owned subsidiary of Matterport.[6]  Legacy Matterport stockholders would be given the right to receive consideration of 4.1183 shares of

---

[1] Unless otherwise noted, the facts described in this section were stipulated to by the parties or proven by a preponderance of the evidence.  To the extent that any conflicting evidence was presented, I have weighed it and made findings of fact accordingly.  Given the limited focus of this decision, the discussion of certain peripheral facts is abbreviated.  Where facts are drawn from exhibits jointly submitted by the parties at trial, they are referred to according to the numbers provided on the parties' joint exhibit list (cited as "JX __") unless defined.

[2] Pre-Trial Stipulation & Order ("PTO") ¶¶ 10-12 (Dkt. 93).

[3] *See id.* ¶¶ 16, 22, 25.

[4] *Id.* ¶ 27.

[5] *Id.* ¶ 29.

[6] *See id.* ¶¶ 11-12, 29; JX 101 ("Merger Agreement").

Matterport Class A common stock per share of Legacy Matterport owned.[7] The merger agreement provided that the transaction would be conditioned upon, among other things, Gores adopting amended bylaws "[p]rior to the consummation of the Transactions."[8]

On July 21, 2021, Gores adopted Amended and Restated Bylaws (the "A&R Bylaws") in anticipation of the business combination.[9] Section 7.10(a) of the A&R Bylaws imposed transfer restrictions on certain shares of Matterport Class A common stock:

> [T]he holders (the "Lockup Holders") of shares of Class A common stock . . . of the Corporation issued (i) as consideration under that certain Agreement and Plan of Merger, dated as of February 7, 2021 . . . or (ii) to directors, officers and employees of the Corporation and other individuals upon the settlement or exercise of restricted stock units, options or other equity awards outstanding immediately following the closing of the Business Combination Transaction in respect of awards of [Legacy Matterport] outstanding immediately prior to the closing of the Business Combination Transaction . . . may not Transfer any Lockup Shares until the end of the Lockup Period . . . .[10]

---

[7] PTO ¶¶ 37-38; *see* Merger Agreement § 3.01.

[8] PTO ¶ 44; Merger Agreement § 8.10.

[9] PTO ¶ 54; *see* JX 197. The A&R Bylaws were adopted on July 21, 2021 but did not go into effect until the next day. A near-identical version of the bylaws, which only differed in the naming of the SPAC, was adopted simultaneously with the A&R Bylaws and was effective in the interim. *See* JX 197.

[10] JX 211 ("A&R Bylaws") § 7.10(a).

3

Section 7.10(d) of the A&R Bylaws defined "Lockup Shares," in relevant part, as "shares of Class A common stock held by the Lockup Holders immediately following the closing of the Business Combination Transaction."[11]  The transfer restrictions were set to expire 180 days after the closing of the business combination.[12]

Brown filed his Verified Complaint on July 13, 2021, along with a motion for a temporary restraining order and a motion to expedite.[13]  On July 19, 2021, I denied the former because of laches and granted the latter.[14]  I observed that the case should be heard and decided before the expiration of the transfer restrictions, given "the plaintiff's concerns about market risk" and the "potential for selling pressure."[15]

On July 22, 2021, the A&R Bylaws became effective when Gores filed an amended certificate of incorporation and the transaction was completed.[16]  Legacy Matterport stockholders did not automatically become Matterport stockholders. Instead, Matterport's transfer agent would issue Matterport Class A common shares

---

[11] *Id.* § 7.10(d)(ii).

[12] PTO ¶ 56; A&R Bylaws § 7.10(d)(i).

[13] Dkts. 1, 2, 3.

[14] Dkts. 26, 27.

[15] Dkt. 29 at 42-43.

[16] PTO ¶¶ 60-62.

4

to Legacy Matterport stockholders upon receipt of a letter of transmittal surrendering their Legacy Matterport shares.[17]

On September 3, 2021, Brown filed an Amended Verified Complaint (the "Complaint").[18] The Complaint advances three claims, but only Count I warranted expedited adjudication.[19] In Count I, Brown seeks a declaration that "Section 7.10 of the [A&R] Bylaws is unenforceable as to Brown" and that he "may freely transfer shares in Matterport and/or conduct derivative trading involving securities in Matterport, without restrictions."[20]

---

[17] PTO ¶ 39; Merger Agreement § 3.04(b).

[18] Dkt. 38 ("Compl."). Brown also filed a Verified Second Amended Complaint on November 17, 2021, but it did not amend Count I and the defendants contest whether Brown could amend his previous Complaint as a matter of right. *See* Dkt. 81; Entity Defs.' Post-Trial Br. 40 n.12 (Dkt. 108).

[19] Count II seeks a declaratory judgment regarding the equitable validity of the transfer restrictions, including under Section 202, and seeks monetary damages. Compl. ¶¶ 93-101. Count III asserts claims for breach of fiduciary duty against the individual defendants. *Id.* ¶¶ 102-06.

[20] *Id.* ¶ 88.

Trial on Count I was held on December 1 and 2, 2021.[21]  The parties submitted post-trial briefing,[22] and I heard post-trial argument on December 21, 2021.[23]  The transfer restrictions will expire on or around January 18, 2022.

## II.    LEGAL ANALYSIS

Brown has proven, by a preponderance of the evidence, that he is not subject to the transfer restrictions in Section 7.10 of the A&R Bylaws.  He does not own Lockup Shares as defined in that provision.

When construing a corporation's bylaws, the court is bound by the principles of contract interpretation.[24]  Words are "given their commonly accepted meaning

---

[21] Much of the evidence presented at trial, including expert testimony, addressed the validity of the restrictions under Section 202(b) of the Delaware General Corporation Law. Because I find that Brown's shares are not subject to the transfer restrictions, I need not reach the question of whether the restrictions are valid under Section 202 in this decision. *See* Dkt. 121 at 9-10 (plaintiff's counsel asserting that if the court concludes Brown's shares are not Lockup Shares, that would be dispositive on Count I).  The evidence and testimony presented will not, however, be wasted.  I believe that they may prove relevant in the second phase of this action.  In that regard, I decline to exclude the opinions and testimony of the defendants' rebuttal experts and of the plaintiff's proposed expert. *See* Pl.'s Post-Trial Opening Br. 26-31 (Dkt. 103); Entity Defs.' Post-Trial Br. 18-19 (Dkt. 108).  Instead, they are admitted and will be given the appropriate weight. *See S. Muoio & Co. v. Hallmark Ent. Invs. Co.*, 2010 WL 3611404, at \*2-3 (Del. Ch. Sept. 16, 2010) (declining to exclude expert and rebuttal testimony and reports in favor of admitting them and affording them the proper weight).

[22] Dkts. 103, 108, 113.

[23] Dkt. 121.

[24] *See BlackRock Credit Allocation Income Tr. v. Saba Cap. Master Fund, Ltd.*, 224 A.3d 964, 977 (Del. 2020) ("Because corporate charters and bylaws are contracts, our rules of contract interpretation apply." (quoting *Hill Int'l Inc. v. Opportunity P'rs L.P.*, 119 A.3d 30, 38 (Del. 2015))).

6

unless the context clearly requires a different one or unless legal phrases having a special meaning are used."[25]  When a "bylaw's language is unambiguous, the court need not interpret it or search for the parties' intent."[26]

The A&R Bylaws define Lockup Shares as "the shares of Class A common stock *held* by the Lock-up Holders *immediately following* the Business Combination Transaction."[27]  I do not find that language ambiguous.[28]  I therefore look to the plain language of the provision, which is straightforward.  "Held" is the past tense of

[25] *Hill*, 119 A.3d at 38 (quoting *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188).

[26] *Saba*, 224 A.3d at 977 (quoting *Hill*, 119 A.3d at 38); *see also PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059, 1070 (Del. 2011) ("If [a contract] is unambiguous, then there is no room for judicial interpretation and 'the plain meaning . . . controls.'" (quoting *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007))).

[27] A&R Bylaws § 7.10(d)(ii) (emphasis added).

[28] Language in the bylaws of certain other post-de-SPAC corporations clearly restricts all shares issued to the targets' stockholders.  See the bylaws of 23andMe Holding Co., for example: "'Lockup Shares' means the shares of common stock received by the stockholders of the Corporation after the date of the adoption of these Bylaws as consideration in the [de-SPAC transaction]."  JX 294 § 7.7(c)(iii).

"hold," which means "to have possession or ownership."[29]  "Immediately" means "without delay."[30]  "Following" means "being next in order or time."[31]

Brown argues that these restrictions do not apply to him because he "h[e]ld" no Matterport shares "immediately following" the July 22, 2021 de-SPAC transaction's closing.[32]  The defendants assert that Brown's reading of the provision would "nullify" the transfer restrictions because "no Legacy Matterport stockholder received Matterport shares" instantly after the transaction closed.[33]  Delaware law rejects "unreasonable" contractual interpretations that lead to an "absurd result."[34]  But the evidence demonstrates that some Legacy Matterport stockholders would

---

[29] *Held*, Merriam-Webster, https://www.merriam-webster.com/dictionary/held (last visited Jan. 9, 2022); *Hold*, Merriam-Webster, https://www.merriam-webster.com/dictionary/hold (last visited Jan. 9, 2022).

[30] *Immediately*, Merriam-Webster, https://www.merriam-webster.com/dictionary/immediately (last visited Jan. 9, 2022); *see Black's Law Dictionary* 764 (11th ed. 2019) (defining "immediate" as "[o]ccuring without delay").  Elsewhere, the word "immediately" was used by Gores to mean exactly that.  *See, e.g.*, JX 197 at 5 ("[T]he Board has determined that it is in the best interests of the Company and its stockholder for the Company to amend and restate the Existing Bylaws . . . to become effectively immediately upon the execution of this Unanimous Written Consent . . . .").

[31] *Following*, Merriam-Webster, https://www.merriam-webster.com/dictionary/following (last visited Jan. 10, 2022).

[32] Pl.'s Post-Trial Opening Br. 7, 55-64.

[33] *See* Entity Defs.' Post-Trial Br. 58.

[34] *Manti Hldgs., LLC v. Authentix Acq. Co.*, 261 A.3d 1199, 1208 (Del. 2021).

have received their Matterport shares within a few days of closing.[35]  That timing

could be viewed as consistent with a plain reading of the bylaw.

It is unnecessary to define the precise time period that the "immediately

following" language covers.  The only question presently before the court is how

(and whether) the transfer restrictions apply to the plaintiff.  I agree with the

plaintiff's interpretation of the bylaw as it concerns Brown's shares.  The evidence

demonstrates that Brown did not hold Matterport Class A shares "immediately

following" the transaction under any commonly accepted meaning of that phrase.[36]

The business combination closed on July 22, 2021.[37]  Brown held only the

right to receive Matterport Class A common shares at that time.[38]  The evidence

---

[35] The Merger Agreement provides that letters of transmittal were to be distributed on the day the proxy statement was issued.  Merger Agreement § 3.04(a).  Matterport Chief Financial Officer, James Fay, testified in his deposition that some Legacy Matterport stockholders returned their executed letters of transmittal before July 29, 2021.  JX 265 at 78-79.  The plaintiff has argued that the court should generally disregard Fay's testimony.  Pl.'s Post-Trial Opening Br. 17, 26.  I find no reason to doubt Fay's credibility on this matter.  *See Towerview LLC v. Cox Radio, Inc.*, 2013 WL 3316186, at *1 (Del. Ch. June 28, 2013) ("The Court will consider the evidence adduced by the parties and will attribute to it the weight the Court deems appropriate based on the credibility of the source and the relevance and probative value of the evidence.").

[36] The defendants' argument that "immediately" should be read to mean "within a reasonable time, in view of the circumstances of the case," see Entity Defs.' Post-Trial Br. 56-57 (quoting *Liberty Mut. Ins. Co. v. Bob Roberts & Co.*, 357 So.2d 978, 970 (Ala. 1978))—even if true—is therefore irrelevant.

[37] *See* PTO ¶¶ 59-62.

[38] This is established by evidence in the record and the defendants' own representations.  *See, e.g.*, Merger Agreement § 3.04(b) ("Until surrendered . . . each share of [Legacy Matterport] Stock shall be deemed, from and after the Effective Time, to represent only the right to receive, upon such surrender, the Per Share Company Common Stock

9

demonstrates that Brown was not issued Matterport shares until at least November 5 and 19, 2021—after he sent executed letters of transmittal to Matterport's transfer agent.[39] Roughly three and a half months elapsed between the business combination closing and the date Brown possessed any Matterport shares. Obtaining shares over 100 days after closing is not "immediately."

Accordingly, I find that Brown does not hold Lockup Shares subject to the transfer restrictions in Section 7.10. This conclusion is the natural consequence of the "deliberate and knowing selection of words for inclusion" in the A&R Bylaws, which the court will not rewrite.[40]

The defendants maintain that Brown cannot prevail on this basis because he did not specifically allege in his Complaint that his shares are not Lockup Shares. Instead, they argue, Brown "waived" that contention because he first articulated an argument about the interpretation of Section 7.10 in his pre-trial brief. I disagree.

_____

Consideration . . . ."); JX 284 at 19 (defendants' expert confirming that it is his "view" that "unless the letter of transmittal is executed, Legacy Matterport shareholders do not hold any Matterport stock"); Entity Defs.' Pre-Trial Br. 30-31 (Dkt. 96) (stating that "Legacy Matterport stockholders did not simultaneously [with the close of the business combination] receive Matterport shares" but instead "their Legacy Matterport shares were converted into '*the right to receive*' Matterport shares issued as merger consideration").

[39] JX 276; JX 311; Dkt. 105 at 30-31 (Brown testifying that he submitted his letters of transmittal "either November 4th or November 5th of 2021" for certain shares and "on November 19, 2021" for the "remainder of his shares").

[40] *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 1984 WL 478415, at *8 (Del. Ch. June 6, 1984), *rev'd on other grounds*, *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108 (Del. 1985).

Brown could not have waived an argument about the meaning of the very contractual language upon which he sought declaratory relief.[41]

Court of Chancery Rule 8(a)(1) only requires the plaintiff to provide a "short and plain statement of the claim showing that [he] is entitled to relief."[42] Brown's Complaint (both initial and amended) put the defendants on notice that the language of Section 7.10, as applied to Brown, was at issue. Both iterations of the Complaint quote Section 7.10 of the A&R Bylaws at length.[43] And Count I of the Complaint seeks "a declaration that: (1) Section 7.10 of the [A&R] Bylaws is unenforceable as to Brown."[44] This court's liberal notice pleading standard has been met.[45] Brown was not required to "set out a legal theory" for Count I in his Complaint to satisfy the standard.[46]

---

[41] The defendants assert that they would have taken discovery on "Brown's reasons for delaying submitting his letters of transmittal, and Brown's understanding of the value of the merger consideration he received," had he raised this argument sooner. Entity Defs.' Post-Trial Br. 48. In my view, neither issue would change the outcome of this decision, as neither affects the A&R Bylaws' text.

[42] Ct. Ch. R. 8(a)(1).

[43] *See, e.g.*, Dkt. 1 ¶¶ 59-61; Compl. ¶¶ 60-62.

[44] Compl. ¶ 88.

[45] *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002).

[46] *Dow Chem. Co. v. Organik Kimya Hldg. A.S.*, 2018 WL 2382802, at *4 (Del. Ch. May 25, 2018) (discussing how "Delaware's approach" to this aspect of notice pleading "mirrors the federal rules").

**III.   CONCLUSION**

The court finds that Brown's Matterport shares are not Lockup Shares under Section 7.10 of the A&R Bylaws.  He may therefore freely trade his Matterport shares and enter into derivative transactions with respect to those shares, without restriction.  All other relevant issues remain for the second phase of this litigation.

12